## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| BLACK STONE INVESTMENT | § | |
| GROUP, LLC | § | CASE NO. 23-33848 |
| | § | |
| **DEBTOR** | § | |
| | § | |
| EVA S. ENGELHART, CHAPTER 7 | § | |
| TRUSTEE | § | |
| Plaintiff | § | |
| | § | |
| v. | § | ADVERSARY NO.  24-03101 |
| | § | |
| ANN BANDA AND DEVON JONES | § | |
| Defendants | § | |
| | § | |
| | § | |
| | § | |

## AMENDED COMPLAINT

Eva S. Engelhart, Chapter 7 Trustee for the estate of Black Stone Investment Group, LLC (the "**Trustee**"), files this Complaint against Ann Banda and Devon Jones pursuant to FED. R. BANKR. P. 7001(1),(2) and (7), seeking actual damages, avoidance of transfers, avoidance of lien, exemplary damages, reasonable attorney's fees and costs, equitable relief, and respectfully shows the Court the following:

### SUMMARY OF THIS ADVERSARY PROCEEDING

Ann Banda is the sole member of Black Stone Investment Group, LLC (the, "**Debtor**"), an alleged real estate investment company whose principal business was the acquisition and renovation of real estate for resale. The Debtor borrowed money from Bellum Civille ("**Lender**") to purchase real property located at 5615 Woodbrook Way, Houston, TX ("**Woodbrook Property**"). The Debtor subsequently failed to pay the funds owed to the Lender (the, "**Note**"). Instead of paying the Note, the Debtor fraudulently transferred the Woodbrook Property to Ms. Banda.

In addition, after the Lender sued the Debtor, Ms. Banda's son, Devon Jones, filed a lien

on the Woodbrook Property asserting that he improved the real property. As discussed in greater detail below, the lien appears to be fraudulent on its face.

Subsequently, Ms. Banda placed the Debtor in a chapter 11 case to avoid the litigation filed by the lender who was owed money pursuant to the Note. The Debtor's Chapter 11 was converted to Chapter 7, and Eva S. Engelhart was appointed to serve as the Chapter 7 Trustee. Ms. Engelhart files this Complaint against Ms. Banda to avoid the fraudulent transfer of the Woodbrook Property and against Mr. Jones seeking a declaration that his purported lien is invalid and was a fraudulent filing.

## PARTIES AND JURISDICTION

1. The Trustee is the duly appointed chapter 7 trustee in this case. The Trustee may be served with pleadings and process in this adversary proceeding through her undersigned counsel.

2. Ann Banda can be served with the summons and this Complaint at 72070 Mandarin Drive, Orlando, Florida 32819.

3. Devon Jones can be served with the summons and this Complaint at 5350 Bellaire Blvd., Bellaire, Texas 77401.

4. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (H), and (O).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§157 and 1334.

7. This adversary proceeding relates to the chapter 7 bankruptcy case, Black Stone Investment Group, LLC, Case No. 23-33848, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division.

8. The Trustee consents to the Bankruptcy Court entering final orders on all non-core matters that may arise in this proceeding.

## STATEMENT OF FACTS

### RELEVANT PARTIES

9. Ann Banda (**"Ms. Banda"**) is the sole member and manager of Black Stone Investment Group, LLC (the, **"Debtor"**).[1]

10. Ms. Banda asserts that the Debtor is a real estate investment company whose principal business is the acquisition and renovation of real estate for resale.[2]

11. Ms. Banda's daughter-in-law, Shylonda Sampson (**"Ms. Sampson"**) was in control of the Debtor,

---

[1] Exhibit 1 – Debtor's Original SOFA
[2] Exhibit 2 – Debtor's Motion to Dismiss (Paragraph 7).

both pre- and post-petition.[3]

12. Mr. Devon Jones (**"Mr. Jones"**) is Ms. Banda's son and Ms. Sampson's husband.

13. Mr. Jones was in control of the Debtor pre-petition.[4]

## WOODBROOK PROPERTY

14. On or about September 6, 2018, the Debtor purchased real property located at 5615 Woodbrook Way, Houston, TX (**"Woodbrook Property"**).[5]

15. On February 19, 2020, the Debtor executed a Note with Diane Alm (**"Alm"**) for the principal sum of $140,000.00, with a maturity date of December 1, 2020 (**"Note"**)[6].

16. Pursuant to the Note, the Debtor was required to pay real property taxes on the Woodbrook Property.

17. On February 19, 2020, the Debtor executed a Deed of Trust with Alm[7], and Ms. Banda signed the Note as manager for the Debtor.

18. Pursuant to the Note, the Debtor was required to pay Alm a total of $140,000.00 by December 1, 2020.

19. On June 15, 2022, Alm assigned and transferred the Note and Lien on the Woodbrook Property to Bellum Civile, LLC (**"Assignment"**).[8]

20. In the Assignment, Alm represented to Bellum Civile, LLC (**"Bellum"**) that the Debtor failed to pay the $140,000.00 principal amount, and property taxes in the amount of $6,687.00.

## TRANSFER OF WOODBROOK PROPERTY

21. On January 3, 2022, approximately one month after the Debtor failed to comply with the terms of the Note, the Debtor transferred the Woodbrook Property to Ms. Banda via a Warranty Deed (the, **"Deed"**).[9]

22. The Debtor received no consideration (*i.e.* $0.00) for the transfer of the Woodbrook Property to Ms. Banda.[10]

23. Ms. Sampson executed the Deed, as the authorized signer on behalf of the Debtor, and transferred

---

[3] Exhibit 3 - Debtor's Amended SOFA (Paragraph 28); Exhibit 4 – Email from Sampson post-petition; and Exhibit 5 – Corporate Resolution.
[4] Exhibit 3 - Debtor's Amended SOFA (Paragraph 28)
[5] Exhibit 6 – Deed purchasing Woodbrook Property.
[6] Exhibit 7 – Note with Alm
[7] Exhibit 8 – Deed of Trust with Alm
[8] Exhibit 9 – Assignment from Alm to Bellum Civile, LLC
[9] Exhibit 10 – Deed Transferring Property to Banda
[10] Ms. Sampson who testified at the 341 meeting on behalf of the Debtor, testified that she had the authority to execute the Deed on behalf of the Debtor and that no funds were transferred by Ms. Banda to the Debtor for the transfer of the property.

the Woodbrook Property to her mother-in-law, Ms. Banda.

24. The Woodbrook Property was valued at $419,793.00 in 2022 when the property was transferred.

25. Therefore, the Debtor had approximately $280,000.00 in equity from the Woodbrook Property when it was transferred to Ms. Banda.


## LITIGATION AND BANKRUPTCY FILED

26. On October 17, 2022, Bellum filed its Original Petition against the Debtor for breach of the Note and against Ms. Banda for the fraudulent transfer of the Woodbrook Property ("**State Court Litigation**").[11]

27. On January 18, 2023, during the pendency of the State Court Litigation, the Debtor responded to Bellum's Requests for Admission, and admitted that the Note had not been paid.[12]

28. On May 2, 2023, and May 16, 2023, the State Court entered orders compelling the Debtor to respond to discovery in the State Court Litigation (**"State Court Orders to Compel"**)[13].

29. On June 5, 2023, instead of complying with the State Court Orders to Compel, Ms. Banda filed a personal Chapter 7 bankruptcy case ("**Personal Chapter 7**").[14]

30. On June 21, 2023, the State Court entered an order dismissing the claims against Ms. Banda as a result of the Personal Chapter 7.[15]

31. Twenty days later, on July 11, 2023, Ms. Banda filed a *Voluntary Motion to Dismiss her Personal Chapter 7* and told this Bankruptcy Court that she wanted her Personal Chapter 7 dismissed because she *"wished to work with her creditors directly"*.[16]

32. However, Ms. Banda never "worked directly with her creditors" as Bellum was never paid pursuant to the Note.

33. The State Court Litigation resumed against the Debtor only, and on July 13, 2023, the State Court entered an Order sanctioning the Debtor and specifically found that the Debtor had no justification, excuse or reason for failing to comply with the State Court Orders to Compel (**"Sanctions Order"**).[17]

---

[11] <u>Exhibit 11</u> – Lawsuit filed by Banda
[12] <u>Exhibit 12</u> – Responses to RFA by Debtor (RFP #4 and #5)
[13] <u>Exhibit 13</u> – Order Compelling May 2; and <u>Exhibit 14</u> (Order Compelling May 16)
[14] <u>Exhibit 15</u> – Banda Personal BK Filing
[15] <u>Exhibit 16</u> – Order Dismissing Banda from State Court Lawsuit
[16] <u>Exhibit 17</u> – Motion to Dismiss Banda's Personal Case
[17] <u>Exhibit 18</u> – Sanctions Order

### LIEN FILED BY DEVON JONES

34. On June 27, 2023, Devon Jones (Ms. Banda's son), filed an Affidavit of Nonpayment in the real property records and asserted that he "performed labor and furnished materials to improve" the Woodbrook Property (**"Affidavit"**).[18]

35. Attached as an exhibit to the Affidavit is the alleged Contractor Agreement between the Debtor and Mr. Jones that was allegedly executed on September 1, 2018 (**"Alleged Contract"**).

36. Pursuant to the Alleged Contract, the Debtor agreed to pay Mr. Jones $49,686.00 **upon the sale** of the Debtor's investment property – The Mainer Property or the Willowmill Property.

37. The reference in the Alleged Contract to "Mainer" is real property located at 3425 Mainer Street, Houston, TX 77021 (**"Mainer Property"**).

38. The Mainer Property was purchased by the Debtor in October 2019.

39. The reference in the Alleged Contract to "Willowmill" is the real property located at 1702 Willow Mill, Missouri City, Texas (**"Willow Mill Property"**).

40. The Willow Mill Property was purchased by the Debtor in October 2019.

41. The Alleged Contract appears to be fabricated as it was executed in September 2018 and requires payment by the Debtor after the sale of the Mainer and Willow Mill Properties – two properties that would not be purchased by the Debtor for another 13 months.

42. Furthermore, the Debtor never sold either the Mainer Property or the Willow Mill Property as Bellum Civille foreclosed on these properties in 2023.

43. Mr. Jones was involved in the operations of the Debtor both pre and post-petition.

### DEBTOR'S BANKRUPTCY CASE

44. On October 2, 2023, the Debtor filed a Chapter 11 Subchapter V Voluntary Petition (**"Chapter 11 Case"**).[19]

45. Ms. Banda signed the Debtor's schedules as president and the authorized representative for the Debtor.

46. Ms. Banda's daughter-in-law, Ms. Sampson was in control of the Debtor as of the petition date and continues to exercise control over the Debtor.

47. During the pendency of the Chapter 11 Case, the Debtor used cash collateral without permission, failed to make proper disclosures, and failed to comply with numerous court

---

[18] <u>Exhibit 19</u> – Affidavit and Alleged Contract
[19] <u>Exhibit 20</u> – Debtor's Bankruptcy filing

orders.[20]

48. On March 18, 2024, the Court entered an Order Converting the Debtor's Chapter 11 Case to Chapter 7, and Eva S. Engelhart was appointed to serve as the Chapter 7 Trustee **("Trustee")**.

49. During the Meeting of Creditors, the Trustee learned that 1) Ms. Banda does not reside in the Woodbrook Property; and 2) Ms. Sampson and her husband Mr. Jones reside in the Woodbrook Property.

## SUMMARY TIMELINE OF RELEVANT FACTS

| DATE | ACTIVITY |
| --- | --- |
| 8-30-2018 | Debtor purchases Woodbrook Property. |
| 9-1-2018 | Mr. Jones claims to have executed Alleged Contract with Debtor requiring payment upon sale of Mainer and Willow Mill Properties. |
| 10-2019 | Debtor purchases Mainer and Willow Mill Properties. |
| 12-1-2020 | Debtor executes Note for $140,000.00 to be paid to Alm. |
| 2-19-2020 | Alm assigns Note to Bellum Civile, LLC. |
| 12-1-2020 | Debtor defaults on Note to Bellum Civile, LLC. |
| 1-2-2022 | Debtor transfers Woodbrook Property to Banda for no consideration. Ms. Sampson signs the Deed on behalf of the Debtor. |
| 10-17-2022 | Bellum Civile, LLC sues Debtor in State Court. |
| 6-27-2023 | Devon Jones files Affidavit and Lien on Woodbrook Property |
| 1-31-2024 | Debtor files Chapter 11 |
| 3-18-2024 | Debtor's case converts to Chapter 7. |

---

[20] Exhibit 21– Motion to Continue Confirmation (admits failure to disclose creditors and executory contracts); Exhibit 22 – Court Terminating Cash Collateral; Exhibit 23 – Order Converting Case requiring debtor to file outstanding MORS that were previously ordered to be filed.; Exhibit 24 First Order re MORS; and Exhibit 25 – Second Order re MORS.

## CAUSES OF ACTION #1 AGAINST ANN BANDA

## CAUSE OF ACTION #1: FRAUDULENT TRANSFER AGAINST ANN BANDA PURSUANT TO TEX. BUS. & COMM. CODE 24.005(A)(1) AND 11 U.S.C. §550

50. The Trustee brings a fraudulent transfer action pursuant to 11 U.S.C. § 544(a), TEX. BUS. & COM. CODE § 24.005(a) and 11 U.S.C. § 550 against Ann Banda.

51. TEX. BUS. & COM. CODE § 24.005(a) provides that a transfer made by a debtor is fraudulent, if the debtor made the transfer … with actual intent to hinder, delay, or defraud any creditor of the debtor.

52. The Trustee incorporates Paragraphs 1 – 33, and 44-49 above into Cause of Action #1.

### First Element: Transfer of Debtor's Property.

53. The Trustee seeks to avoid the transfer of the real property located at 5615 Woodbrook Way, Houston, TX (the, **"Woodbrook Property"**).

54. On August 30, 2018, the Debtor purchased the Woodbrook Property.

55. On January 3, 2022, the Debtor transferred the Woodbrook Property to Ms. Banda. (**"Woodbrook Transfer"**).

### Second Element: Creditor's Claim Arose Before the Transfer.

56. The Debtor was obligated to pay $140,000.00, plus interest and property taxes on the Woodbrook Property by December 1, 2020 to Bellum Civille, LLC (**"Note"**).

57. The Debtor defaulted on its obligations under the Note on December 1, 2020.

58. The Woodbrook Transfer occurred on January 3, 2022.

59. Therefore, the creditor's claims arose prior to the Woodbrook Transfer.

### Third Element: Transfer occurred within four years of petition date.

60. The Woodbrook Transfer occurred on January 3, 2022.

61. The Debtor filed its bankruptcy case on January 31, 2024.

62. Therefore, the transfer occurred within four years of the petition date.

### Fourth Element: Intent to hinder, delay, or defraud any creditor of the debtor.

63. Pursuant to Section 24.005(b), in determining actual intent, consideration may be given to multiple factors.  As described in detail above and incorporated herein, the vast majority of the badges of fraud exist in this case.

a. **The lack or inadequacy of consideration.**

    a. Here, the Debtor received no consideration ($0.00) for the transfer of the Woodbrook Property to Ms. Banda.

    b. Ms. Banda testified at the 341 Meeting that no funds were provided to the Debtor for the transfer of the Woodbrook Property.

b. **The family, friendship or close associate relationship between the parties.**

    a. Ms. Banda is the Debtor's president and signed the Debtor's bankruptcy schedules as the authorized representative.

    b. Ms. Banda is also the sole owner of the Debtor.

c. **Whether the Debtor was sued or threatened with suit before the transfer occurred.**

    a. The Trustee is uncertain at this time if the Debtor had been threatened with suit prior to the Woodbrook Transfer. However, litigation was filed against the Debtor after the transfer occurred.

d. **The general chronology of events and transactions under inquiry.**

    a. Here, the Debtor was unable to pay its debts as they came due as it was not paying Bellum pursuant to the Note. Instead, Ms. Banda transferred the Woodbrook Property to herself.

    b. Ms. Banda's attempt to file personal bankruptcy and then have the case dismissed is further evidence of the gamesmanship she continues to play.

64. Here, the vast majority of the factors weight in the Trustee's favor, to show that the Debtor transferred the Woodbrook Property to Ms. Banda with the intent to hinder, delay and defraud creditors.

65. The Trustee seeks a judgment avoiding the transfer of the Woodbrook Property and reasonable attorney's fees and costs for the prosecution of this Adversary. TEX. BUS. & COM. CODE § 24.005(a).

### CAUSE OF ACTION #2: FRAUDULENT TRANSFER AGAINST ARROW DRIVER SOLUTIONS, LLC PURSUANT TO TEX. BUS. & COMM. CODE 24.006(A) AND 11 U.S.C. §550

66. The Trustee brings a fraudulent transfer action pursuant to 11 U.S.C. § 544(a), TEX. BUS. & COMM. CODE, § 24.006(a) and 11 U.S.C. § 550 against Ann Banda.

67. To establish a claim under TEX. BUS. & COMM. CODE, § 24.006(a), the Trustee must prove that the transfer made by the Debtor was fraudulent as to a creditor whose claim arose before the

transfer without (1) receiving a reasonably equivalent value in exchange for the transfer, and the (2) the debtor became insolvent as a result of the transfer.

68. The Trustee incorporates Paragraphs 1 – 33, and 44-49 into Cause of Action #2.

### First Element: Transfer of Debtor's Property.

69. The Trustee seeks to avoid the transfer of the real property located at 5615 Woodbrook Way, Houston, TX (**"Woodbrook Property"**).

70. On August 30, 2018, the Debtor purchased the Woodbrook Property.

71. On January 3, 2022, the Debtor transferred the Woodbrook Property to Ms. Banda (**"Woodbrook Transfer"**).

### Second Element: Creditors Claim Arose Before the Transfer.

72. The Debtor was obligated to pay $140,000.00, plus interest and property taxes on the Woodbrook Property by December 1, 2020 to Bellum Civille, LLC (**"Note"**).

73. On December 1, 2020, the Debtor defaulted on its obligations under the Note to Bellum.

74. The Woodbrook Transfer occurred on January 3, 2022.

75. Therefore, the creditor's claims arose prior to the transfer of the Woodbrook Property to Ms. Banda.

### Third Element: Transfer occurred within four years of petition date.

76. The Woodbrook Transfer occurred on January 3, 2022.

77. The Debtor filed its bankruptcy case on January 31, 2024.

78. Therefore, the transfer occurred within four years of the petition date.

### Fourth Element: The Debtor received less than reasonably equivalent value.

79. Here, the Debtor received $0.00 in consideration for the transfer of the Woodbrook Property.

80. The Woodbrook Property was valued at approximately $419,793.00 in 2022 when the property was transferred. Therefore, the Debtor had approximately $280,000.00 in equity from the Woodbrook Property when it was transferred to Ms. Banda.

81. Therefore, the Debtor received far less than reasonably equivalent value as the Debtor received no consideration for an asset worth approximately $280,000.00.

### Fifth Element: Transfer made when the debtor was insolvent, or which rendered the debtor insolvent.

82. The Debtor was insolvent when the Woodbrook Property was transferred to Ann Banda.

83. Specifically, the Debtor was insolvent as it was unable to pay its debts as they came due.  For example, the Debtor was unable to make its payments to Bellum, along with the other creditors listed in the Debtor's sworn schedules.

## CAUSE OF ACTION #3: DECLARATION OF INVALID LIEN AGAINST DEVON JONES

84. The Trustee seeks a declaration that Mr. Jones' purported "lien" on the Woodbrook Property is invalid.

85. The Trustee incorporates Paragraphs 34-43 into Cause of Action #3 against Mr. Jones.

86. Mr. Jones' purported lien arises under Texas law.  In Texas, there must be an underlying debt securing a lien for the lien to encumber collateral.  *Satsky v. United States,* 993 F. Supp. 1027, 1029 (S.D. Tex. 1998) (citing *United States v. Phillips,* 267 F.2d 374, 377 (5th Cir. 1959)).

87. Furthermore, the existence of an underling debt alone is insufficient to give rise to a lien. *Nelson v. Nelson,* 193 S.W.3d 624, 628 (Tex. App.-Eastland 2006, no pet.)

88.  A lien must be supported by a creditor's right to proceed against certain property as recourse for nonpayment of a debt. *Nelson,* 193 S.W.3d at 628; *accord* Tex. Bus. & Com. Code Ann. § 9.203(b) (West 2019).

89. Here, the Trustee asserts that there was no underlying debt as the Alleged Contract could not have existed at the time the contract was executed based on the fact that the terms required payment upon the sale of the Mainer Property and Willow Mill Property – two properties that were not owned by the Debtor until 2019 (one year after the Alleged Contract was executed).

90. Furthermore, even if the Court were to determine that the Alleged Contract was valid, then the Trustee asserts that the Debtor is not liable as the Alleged Contract required payment only upon the sale of the Mainer Property and the Willow Mill Property.

91. The Debtor never sold either the Mainer Property of the Willow Mill Property.

## CAUSE OF ACTION #4:  FRAUDULENT LIEN FILING AGAINST MR. JONES

92. The Trustee asserts that Mr. Jones is liable for filing a fraudulent lien against the Woodbrook Property.

93. The Trustee incorporates Paragraphs 34-43 into Cause of Action #4 against Mr. Jones.

94. Section 12.002 of the Texas Civil Practice and Remedies Code imposes liability on anyone who (i) files a document known to be fraudulent lien against real property; (ii) with the intent that the documents be given legal effect, and (iii) with the intent to cause another person physical, mental or pecuniary harm. *Walker & Associates Surveying, Inc. v. Roberts,* 306

S.W.3d 839, 848 (Tex. App.-Texarkana 2010, no pet.) (citing Tex. Civ. Prac. & Rem. Code Ann. § 12.002(a) (Vernon Supp. 2009)).

95. Here, Mr. Jones filed the purported Lien in the real property records against the Woodbrook Property on June 27, 2023.  Mr. Jones attached an Affidavit of Nonpayment in the real property records and asserted that he "performed labor and furnished materials to improve" the Woodbrook Property (**"Affidavit"**).[21]

96. Attached as an exhibit to the Affidavit is the alleged Contractor Agreement between the Debtor and Mr. Jones that was allegedly executed on September 1, 2018 (**"Alleged Contract"**).

97. Pursuant to the Alleged Contract, the Debtor agreed to pay Mr. Jones $49,686.00 **upon the sale** of the Mainer Property and the Willow Mill Property. Both of these properties were purchased by the Debtor in October 2019.

98. On its face, the Affidavit and the Alleged Contract are fraudulent as the Alleged Contract was executed in 2018 and the contract provides that the Debtor will owe Mr. Jones $49,686.00 upon the sale of two properties (Willow Mill and Mainer) that had not yet been purchased by the Debtor.

99. Mr. Jones was actively involved in the Debtor's affairs both pre and post-petition.

100.    Mr. Jones was well aware of the legal effects and financial harm associated with filing liens on real property as Mr. Jones is in the remodeling business and has filed multiple liens in the past.

101.    The Lien at issue caused pecuniary harm to Bellum Civille, LLC (the secured lender) as this purported lien would decrease the amount that Bellum Civille could recover after the Woodbrook Property was sold. Furthermore, if the transfer of the Woodbrook Property is voided as a fraudulent transfer, this bankruptcy estate would be harmed financially as these funds would go to Mr. Jones.

102.    In summary, the Trustee asserts that Mr. Jones is liable pursuant to Section 12.002 of the Texas Civil Practice and Remedies Code as he 1) filed a document known to be fraudulent lien against the Woodbrook Property; (ii) with the intent that the document be given legal effect, and (iii) with the intent to cause pecuniary harm to the Debtor's creditors.

103.    Therefore, the Trustee seeks reasonable attorney's fees and exemplary damages from Devon Jones due to his violation of Section 12.002 of the Texas Civil Practice and Remedies Code

---

[21] Exhibit 19 – Affidavit and Alleged Contract

**WHEREFORE**, Eva S. Engelhart, prays this Court enter judgment in favor of the Trustee and against the Defendants avoiding the transfer of the Woodbrook Property, a declaration of an invalid lien, and an award of attorney's fees, pre and post-judgment interest and costs.

Dated: June 14, 2024

Respectfully submitted,

By:  /s/ Miriam Goott
       Miriam Goott
       attorney-in-charge
       SBN 24048846
       COUNSEL FOR THE
       TRUSTEE

OF COUNSEL:
Walker & Patterson, P.C.
P.O. Box 61301
Houston, TX 77208
(713) 956-5577 (telephone)
(713) 957-3358 (fax)
mgoott@walkerandpatterson.com